James B. PHELPS, Sr., et al., Appellants,

v.

Howard SALLEE, Commissioner, Department of Banking & Securities, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 31, 1975.

Larry D. Raikes, Hodgenville, William E. Johnson, Johnson, Judy & Gaines, Frankfort, for appellants.

Thomas C. Jacobs, Gen. Counsel, Dept. of Banking & Securities, William A. Young, Young & Williams, Frankfort, for appellees.

CATINNA, Commissioner.

This court, having reviewed its order entered in this proceeding on September 3, 1975, has concluded that the order should be withdrawn. Therefore, the order is now withdrawn and held for naught, and this opinion is substituted.

The question presented for the court's consideration concerns the finality of an order entered by Howard T. Sallee as Commissioner of the Department of Banking and Securities on March 11, 1975.

On August 19, 1974, the appellants filed with the Department of Banking and Securities articles of incorporation of a proposed

Peoples State Bank at Hodgenville. The articles of incorporation were filed with the department as required by KRS 287.050 which reads as follows:

"(1) Before filing the articles of incorporation of any financial institution mentioned in KRS 287.040, the incorporators shall present a copy of their proposed articles to the commissioner of banking and securities who shall investigate the financial standing, moral character and capability of each of the incorporators, and determine whether there is reasonable assurance of sufficient volume of business for the proposed corporation to be successful, and whether the public convenience and advantage will be promoted by the opening of the proposed corporation.

"(2) If the commissioner of banking and securities determines that it is expedient and desirable to permit the proposed corporation to engage in business, he shall approve the articles of incorporation in writing, and the articles then may be filed and recorded as provided in the general corporation law."

On August 20, 1974, the department forwarded notices of the application to other banks in the area. The notice allowed the recipient twenty days within which to file a protest "and/or request an evidentiary hearing" on the application. Local banks filed protests with the department on September 3 and September 5, 1974. However, there was no request made for an evidentiary hearing.

On March 11, 1975, the department, acting by and through Howard T. Sallee, entered an order which recited that notice had been given, that no request for hearing had been made, and that the banking commissioner, in compliance with KRS 287.050, had caused the required investigation to be made. The order recited that as a result of the investigation the department was satisfied that there had been a compliance with statutory requirements. This order provided in part as follows:

"Accordingly, it is hereby ORDERED that the articles of incorporation of the proposed Peoples State Bank be APPROVED.

However, the issuing of an actual certificate entitling the corporation to transact a banking business pursuant to KRS 287.060 shall be subject to:

1. The obtaining of FDIC insurance; and

2. A finding by the Commissioner of the Department of Banking and Securities that KRS 287.060(3) has been complied with."

It might be well to note at this point that the Peoples State Bank obtained FDIC insurance. The requirements of KRS 287.-060(3) entailed further consideration of transactions which could not have been performed by any of the parties at any time prior to the entry of the order of March 11, 1975. KRS 287.060(3) provides as follows:

"Oath required of directors before transacting business.—

\*    \*    \*    \*    \*    \*

(3) After the oath has been filed, if the commissioner is satisfied that all requisite laws have been complied with, he shall issue a certificate to the institution, setting out therein that such institution has subscribed and paid in the required capital, and otherwise fully complied with all pertinent laws and regulations. The certificate will entitle the institution to at once transact the business for which it was organized."

On March 28, 1975, the objecting banks, by motion filed with the department, asked that the order of March 11 be set aside and that they be granted a hearing on the application. The appellants, after having obtained FDIC insurance, were in a position to proceed except that the commissioner, although he had *approved* the articles, either neglected or refused to stamp his approval on the articles and forward them to the secretary of state for recording. KRS 287.050(2). The failure or refusal of the

commissioner to forward the articles to the secretary of state or to rule on the motion for a hearing continued over a period of time, despite numerous inquiries. Finally, the appellants were informed that the commissioner did not know when he would rule on the motion.

The economics of the situation required that appellants take some immediate action which was done by the filing in the Franklin Circuit Court of a petition for an order of mandamus by which the commissioner would be required to rule on the motion of the banks to set aside the prior order approving the articles. In the alternative, the court was requested to direct the commissioner to stamp his approval on the articles of incorporation and forward them to the secretary of state for filing and recording.

On June 5, 1975, the commissioner entered an order directing that a hearing be held on the question of whether the banks had been denied procedural due process by reason of a claimed inadequacy of the notice. The appellants tendered an amended complaint in an effort to enjoin all further action by the commissioner, with the exception of the stamping of his "prior" approval on the articles of incorporation and the forwarding of them to the secretary of state for filing. The banks moved to intervene and filed an intervening complaint asking that the commissioner be required to hold an evidentiary hearing on the application.

After all pleadings were filed, the trial court overruled the motion of the appellants for an order of mandamus and dismissed their complaint and amended complaint, stating that it had determined that they were not entitled to the relief sought. It then ordered that the entire proceeding be remanded to the Department of Banking and Securities with directions that it hold a public hearing on the application.

■ This court is of the opinion that once the order of March 11, 1975, had been duly issued by the department it became a final order upon the issue involved, and the department was without authority to thereafter modify, change, or set aside the order.

■ Chapter 287 of the Kentucky Revised Statutes, particularly those sections concerning the organization of a new bank, KRS 287.040–287.080, makes no provision for nor does it require that the commissioner, in performing his statutory duties, give notice of the filing of the articles of incorporation of a proposed bank for the approval mandated by KRS 287.050. There is no statutory requirement that the commissioner conduct hearings upon the application. KRS Chapter 287 does not grant to the commissioner the authority to promulgate and enforce rules, nor does the statute provide for an appeal from any order the commissioner may enter pursuant to KRS 287.-040 and 287.060.

The question of the authority of an administrative agency to change or modify an order or ruling once it has been made depends in so many instances upon the procedural requirements outlined by the statute creating the agency that there is no foundation upon which to promulgate a general rule. This court has rarely been confronted with the question because statutory requirements have usually taken care of the quandary which may be created by a subsequent change.

In a zoning case, this court noted that the statute governing the making of adjustments in a zoning plan made no provision for a rehearing. It was stated: "The law seems to be settled that in the absence of statutory authority an administrative agency has no authority to set up a rehearing procedure * * *." *Hennessy v. Bischoff,* Ky., 240 S.W.2d 71 (1951). While the issue before the court in the proceeding was a rehearing procedure, the rule would have equal application in those instances where the administrative agency is seeking to effect a change in a prior order that it has entered. Even this rule loses some of its effectiveness when we lift from our opinion in *Union Light, Heat & Power Company v. Public Service Commission,* Ky., 271 S.W.2d 361 (1954), the following remarks:

"Furthermore, we know of no rule or law that denies to a court the right to revoke an order and substitute in lieu thereof a new and different one, provided the court has not lost jurisdiction over the case involved. An administrative agency unquestionably has the authority, just as has a court, to reconsider and change its orders during the time it retains control over any question under submission to it."

The confusing factor that intertwines the power of the court with that of an administrative agency is the fact that courts lose jurisdiction over cases after the lapse of certain periods of time or the occurrence of certain events, most of which are covered either by statute or by rules of the court. Such is not true of many administrative agencies, and it is almost impossible to ascertain with any degree of certainty the time when an administrative order becomes so final that the agency involved no longer has jurisdiction over the question involved. We might remark that even under *Union Light* the commissioner could not have changed his order of March 11. His order finally approved the articles of incorporation, and there remained nothing further for the commissioner to do insofar as KRS 287.050 was concerned except the ministerial act of stamping his "prior" approval on the articles so that the secretary of state would be apprised of the fact that he had performed his duty when the articles were lodged for recording.

■ We have concluded that even though there is a conflict in authorities an administrative agency does not have any inherent or implied power to reopen or reconsider a final decision and that such power does not exist where it is not specifically conferred upon the agency by the express terms of the statute creating the agency. Cf. 73 A.L.R.2d 939, Anno.

■■ We make no effort to preclude the protesting banks from contesting the validity of the action of the department in approving the articles of incorporation. However, in this situation it is our opinion that the rules which generally govern a contest of such orders would apply. These protesting parties are fully privileged to file an appeal from the order of the department. In discussing the judicial review of an administrative order, this court made the following observations in *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450 (1964):

"Basically, judicial review of administrative action is concerned with the question of arbitrariness. On this ground the courts will assume jurisdiction even in the absence of statutory authorization of an appeal. * * *. There is an inherent right of appeal from orders of administrative agencies where constitutional rights are involved, and section (2) of the Constitution prohibits the exercise of arbitrary power."

\* \* \* \* \* \*

"In the interest of fairness, a party to be affected by an administrative order is entitled to procedural due process. * *. Administrative proceedings affecting a party's rights which did not afford an opportunity to be heard could likewise be classified as arbitrary."

The protesting banks do not deny the fact that they were afforded an opportunity to protest the approval of the articles by the department. However, they claimed that the notice received really did not afford them a sufficient warning of their right to have a hearing. This court is of the opinion that the failure to hold a hearing under the statute involved in this proceeding could not of itself constitute a denial of procedural due process. Yet, the fact that the hearing was not conducted may be considered as evidence bearing upon the question of the arbitrariness of the order of the commissioner.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.