LAMBERT, J., JUDGE:
This matter is a second administrative appeal arising from the dismissal of Willis Wilson's employment as an Attorney Senior with the Lexington-Fayette Urban County Government (LFUCG) by the Civil Service Commission (CSC). Wilson has appealed from the February 13, 2017, order of the Fayette Circuit Court affirming the CSC's findings of fact and conclusions of law upholding his dismissal on remand as well as from the March 12, 2017, order *378 denying his Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter, amend, or vacate. Finding no error, we affirm.
We shall rely upon the statement of the facts and procedural history as set forth in the opinion this Court rendered in Wilson's first appeal in Action No. 10-CI-00313:
Willis L. Wilson appeals the circuit court's order affirming the Civil Service Commission's order sustaining his dismissal from employment with the Lexington-Fayette Urban County Government (LFUCG). Because the Civil Service Commission (CSC) failed to make factual findings supporting its decision, we reverse and remand.
Wilson was originally employed as a contract specialist by the LFUCG's Division of Risk Management located in the Department of Law. Employees within the Division of Risk Management were aware that this division was to be divided into two parts. Wilson asked that his position be reclassified as an Attorney Senior position; he received this classification and began receiving assignments from the Department of Law. Later, when the Division of Risk Management was divided, the portion of the division involved with litigation was absorbed by the Department of Law while the other portion of the division was absorbed by the Department of Finance and Administration. The parties were in a dispute as to whether Wilson continued to be employed by the portion of the Division of Risk Management absorbed by the Department of Finance and Administration or by the Department of Law.
On July 27, 2009, LFUCG, Department of Law, brought charges against Wilson before the LFUCG Civil Service Commission alleging inefficiency and insubordination in violation of Sections 8a and 8d of the Uniform Discipline Code within the meaning of Kentucky Revised Statutes (KRS) 67A.280 and Section 21-44 of the Lexington-Fayette County Code of Ordinances, and requested that Wilson be dismissed from his position. The Department of Law alleged inefficiency and insubordination as follows: Count I: failing to timely and adequately prepare a motion for discretionary review in January of 2009; Count II: failing to timely and adequately prepare a brief that was due on February 13, 2009; Count III: failing to timely and adequately prepare a response to a cross-motion for discretionary review on May 18, 2009; Count IV: failing to follow his supervisor's directions to request an extension to file a position statement before the Equal Employment Opportunity Commission (EEOC) in May of 2009; and Count V: repeatedly failing to demonstrate the ability to perform the duties of an Attorney Senior and failing to follow his supervisor's instructions. Each legal document was alleged to have been untimely and inadequately prepared because it was late, had numerous drafting and grammatical errors, required redrafting by another attorney to meet the filing deadline, and in some of these documents Wilson was alleged to have relied on improper legal arguments.
At Wilson's hearing before the CSC, testimony was provided by Logan Askew, Commissioner of Law of the LFUCG; Leslye Bowman, Director of Litigation in the Department of Law of the LFUCG; Attorney Senior Rochelle Boland and Wilson. The testimony by Askew, Bowman and Boland supported the Department of Law's position that Wilson was employed by the Department of Law and violated LFUCG's Uniform Discipline Code as to inefficiency and insubordination. These witnesses testified as follows: Wilson requested *379 and was reassigned to the Department of Law, his office was moved into the Department's space and all assignments he received, support personnel assisting him, and salary he drew were from the Department of Law. Bowman offered extensive training to Wilson to help him transition from his former position. Wilson knew of the policy that pleadings due to be filed within thirty days must be submitted in final draft five days before the due date and pleadings due sooner must be submitted three days before the due date (the five/three policy). Wilson repeatedly submitted deficient and untimely work that had to be substantially rewritten by other attorneys at the last minute in order to meet the filing deadlines. Bowman repeatedly instructed Wilson to get an extension of time to file a position statement with the EEOC, but the extension was not obtained until after her fourth request. Wilson was repeatedly advised that his work needed to improve, but Wilson was unable to develop the skills needed to perform adequately as an Attorney Senior.
Wilson testified he was reclassified as an Attorney Senior while still working for the Division of Risk Management, when he was "borrowed" by Department of Law, but he continued to be employed by the Division of Risk Management under the Department of Finance and Administration. He acknowledged being overwhelmed with the amount of work he was assigned by the Department of Law and having to work with other attorneys on every legal document referenced in the charges. He was unaware of the five/three policy but asserted he timely submitted his work. Wilson claimed he promptly followed Bowman's request to get an extension of time to file a position statement with the EEOC. Wilson claimed that although Bowman and Askew told him they had problems with his work performance, instead they had a problem with his salary following his reclassification.
On December 17, 2009, the CSC issued a one-paragraph opinion which stated:
On December 16, 2009, at the request of the Lexington-Fayette Urban County Government, the Civil Service Commission heard a request for termination of W.L. Wilson, Attorney Sr.-Department of Law. The Lexington-Fayette Urban County Government and the Defendant provided testimony, witnesses and exhibits. The Commission found in favor of Lexington-Fayette Urban County Government and unanimously sustains the termination of W.L. Wilson.
Wilson timely filed an appeal with the circuit court against Askew in his individual and official capacities, Bowman in her individual and official capacities, and the LFUCG (appellees); he also filed additional claims against Askew and Bowman. Wilson appealed his dismissal on the ground that the CSC acted in an arbitrary manner. The appeal was bifurcated from the other claims, which were stayed pending the outcome of the appeal.
Following a hearing before the trial court wherein additional evidence was offered, the trial court affirmed Wilson's termination on March 12, 2012. The trial court determined that Wilson was entitled to a quasi trial de novo , engaged in a quasi trial de novo , determined that there was no evidence the CSC acted arbitrarily, and affirmed its determination and termination of Wilson. The court made its own findings, which supported the CSC's ultimate conclusion sustaining termination.
*380 Wilson had been counseled numerous times on his work performance and had adequate notice of his work deficiencies before the charges were filed, the notice of charges was adequate, the testimony and exhibits supported the charges, and Wilson was employed by the Department of Law at the time the charges were filed. The court determined progressive discipline was not mandatory. The trial court found that the CSC's determination did not need to be vacated for failing to make specific findings of fact or conclusions of law because the CSC complied with KRS 67A.280(4), which only required that the action and decision of the CSC on the charges be reduced to writing and kept in a book and those written charges be attached to the book containing the body's decision.
Wilson v. Askew , 2012-CA-000847-MR, 2013 WL 4508129, at *1-2 (Ky. App. Aug. 23, 2013).
This Court ultimately held "that the trial court erred in upholding the CSC's decision to dismiss Wilson because the CSC's decision was entirely devoid of factual findings to support its ultimate conclusion[,]" id. at *3, and "that the trial court exceeded its scope of review by basing its judgment solely on its own findings of fact[,]" id. at *4. We rejected Wilson's argument that the matter could not be remanded for further findings:
Wilson argues that we cannot remand for further factual findings because KRS 67A.230 and KRS 67A.290 do not authorize remand to the CSC. Wilson relies on the statement in Phelps v. Sallee , 529 S.W.2d 361, 365 (Ky. App. 1975), that "an administrative agency does not have any inherent or implied power to reopen or reconsider a final decision and that such power does not exist where it is not specifically conferred upon the agency by the express terms of the statute creating the agency."
Wilson misunderstands Phelps . Phelps is concerned with further action taken by an agency after its final order has been issued but not appealed. Its statement has no relevance to an agency's ability to act after its decision has been reversed on appeal.
We disagree with Wilson. Judicial review would be meaningless if review could not result in a remedy. The process by which an appeal may be taken from an administrative dismissal by an urban county government is established by KRS 67A.290. However, the judicial review of such an appeal is governed by the general statute on judicial review of final administrative orders. KRS 13B.150 states that a court reviewing a final administrative order may affirm, reverse in whole or part "and remand the case for further proceedings if it finds the agency's final order is: "(a) In violation of constitutional or statutory provisions; ... (d) Arbitrary, capricious, or characterized by abuse of discretion; ... or (g) Deficient as otherwise provided by law." When there is an insufficient basis for meaningful review to determine whether an administrative action was arbitrary, remanding is usually the appropriate action. See Smith v. O'Dea , 939 S.W.2d 353, 356 (Ky. App. 1997) ; Gen. Elec. Co. v. Martin , 574 S.W.2d 313, 321-322 (Ky. App. 1978) ; Wilder v. Great Atl. & Pac. Tea Co., Inc. , 788 S.W.2d 270, 272 (Ky. 1990). If an administrative agency failed to make adequate findings but had adequate evidence upon which to make findings, a reviewing court should normally remand for further factual findings upon the evidence already received. Ford Motor Co. v. N.L.R.B. , 305 U.S. 364, 373-374, 59 S.Ct. 301, 306-307, 83 L.Ed. 221 (1939).
*381 Wilson v. Askew , 2013 WL 4508129, at *4. We ultimately reversed and remanded the circuit court's decision "so that the Civil Service Commission may make appropriate factual findings to support its decision based upon the evidence it had before it when it rendered its decision." Id. Thereafter, we denied Wilson's petition for rehearing. The Supreme Court of Kentucky denied Wilson's motion for discretionary review on December 10, 2014, and the opinion became final later that month.
When the first appeal became final, the matter returned to the circuit court. In January 2015, LFUCG moved the circuit court to remand the matter to the CSC to enter its findings of fact pursuant to this Court's final opinion. In his response, Wilson pointed out that this Court had not directed the CSC to reach a particular conclusion and that the circuit court should direct the CSC to state the evidence upon which it relied for each finding of fact. After a hearing, the court remanded the matter to the CSC for entry of findings of fact in an order entered January 27, 2015. The next month, LFUCG, Askew, and Bowman moved the circuit court for partial summary judgment pursuant to CR 56.02 to dismiss Counts IV and V of Wilson's complaint, stating there were no issues of material fact with respect to their liability for those allegations (a violation of the Kentucky Civil Rights Act, KRS 344.040, and for official misconduct for terminating him based on discrimination or abuse of power). The motion was renoticed for a hearing in May and, later, the defendants moved to submit this motion on the record, noting that Wilson had not responded. Wilson subsequently responded that he would be filing an objection, which he did in late April. He argued that neither Askew nor Bowman were authorized to suspend him because he was employed in the Division of Risk Management when the charged conduct took place.
Also in February, Wilson moved the circuit court to disqualify David Enlow from participating in and representing the CSC on the remand of the case because he had not been employed via a contract signed by the Mayor and due to his bias. LFUCG objected, stating that the circuit court did not have jurisdiction related to the CSC appeal, that Wilson had failed to establish any bias on Enlow's part, and that the Commissioner of Law had the authority to retain outside counsel to advise the CSC. The circuit court denied this motion in an order entered March 20, 2015, stating that it had retained jurisdiction, that the Commissioner of Law had the authority to retain Enlow, and that there had been no showing of bias.
In a separate motion, Wilson moved the court to declare that the CSC did not have jurisdiction to enter findings of fact because KRS 13B.150 is inapplicable to administrative bodies in an urban county pursuant to KRS 13B.020(2)(f). LFUCG also objected to this motion, noting that this Court had already rejected this argument twice, first in the opinion and second by denying the petition for rehearing, that the circuit court lacked jurisdiction over the matter due to the earlier remand, and that the law of the case doctrine barred re-litigation of this issue. The circuit court denied the motion on March 31, 2015, after hearing arguments from counsel.
On March 18, 2015, the CSC entered its findings of fact and conclusions of law, signed by Lisa Smith as Chair. After setting forth the five charges, the CSC made extensive findings of fact based on the evidence submitted at the December 9, 2009, hearing and concluded that Wilson's termination should be "sustained by reason of the inefficiency, misconduct and insubordination in the performance of his duties as Attorney Senior." Wilson filed a *382 notice of rebuttal of the CSC's findings of fact on April 20, 2015, continuing to challenge Enlow's role in the case as well as the short amount of time the CSC took to accept these findings. He also addressed which department employed him and whether LFUCG had met its burden of proving he had acted inefficiently and had been insubordinate. Wilson also filed a motion seeking recusal of the circuit court judge on May 1, 2015, pursuant to KRS 26A.015(2)(a), based upon the judge having expressed an opinion about the merits of the opinion in the original opinion affirming his termination. The defendants objected, and the circuit court denied the motion on May 18, 2015, after hearing arguments from counsel.
On June 15, 2015, the court ruled on the defendants' motion for a partial summary judgment related to Counts IV and V of Wilson's complaint. The court rejected Wilson's argument that he was not in the Department of Law but had been transferred to the Department of Finance and Administration with the Division of Risk Management in Ordinance 183-2008. The court stated:
This argument is unpersuasive since a clear reading of ordinance 183-2008 in the Record at page 1 attached hereto says that the ordinance is "abolishing ... one (1) position of Attorney St., [sic] Grade 121E., in the Division of Risk Management[.]" Further, the ordinance states that it is "... creating one (1) position of Attorney Sr., Grade 121E ... in the Department of Law." This is Wilson without dispute. Therefore, Wilson was clearly in the Department of Law when the charges were filed against him on July 27, 2009 by the Commission of Law and the Director of Litigation for the LFUCG. These persons were the exact persons who had the authority and responsibility to take this action against Wilson under the classification of an Attorney Sr. in the Law Department.
Accordingly, the circuit court granted a partial summary judgment to the defendants on Counts IV and V of Wilson's complaint.
While litigation continued in the first circuit court appeal, on April 17, 2015, Wilson filed a second complaint (Action No. 15-CI-01402) from the CSC's opinion and order entered upon remand, naming Lisa Short, Frances Short, Esteva Caise-Draggs, and Glenn Mills, as members of the CSC in both their individual and official capacities; the CSC; and LFUCG. He complained that the CSC's decision to hire attorney David Enlow for purposes of drafting the findings of fact and conclusions of law was improper and he should have been disqualified; that the CSC only spent a brief time at its meeting to approve Enlow's findings of fact and conclusions of law; that he was not employed in the Department of Law and could not be terminated by anyone from that department; that LFUCG failed to establish he had acted inefficiently or had been insubordinate; that the findings were not supported by the evidence; that LFUCG failed to place the Uniform Disciplinary Code into evidence; and that the allegedly deficient briefs he had written were not admitted into evidence. As a result, Wilson sought punitive damages from the defendants in their individual capacities as well as the restoration of his back pay and benefits. Shortly thereafter, Wilson moved to amend his complaint pursuant to CR 15.01 to add David Enlow as an additional party. The circuit court denied the motion to add Enlow as a party as futile as Wilson "has asserted no viable cause of action" against him in the amended complaint tendered with the motion. The defendants moved the court to consolidate the two related actions and set a briefing schedule. Wilson objected, but by order entered November *383 20, 2015, the court consolidated the two circuit court actions. The court permitted the parties to conduct discovery until December 23, 2015, and scheduled an evidentiary de novo hearing for January 2016.
In December, Wilson filed an affidavit pursuant to KRS 26A.020(1) to recuse the circuit court judge and designate a special judge, stating that the judge would not afford him a fair and impartial trial because he had "decided all significant issues raised in the trial court in favor of the Defendant, Government." The Chief Justice denied the motion to disqualify by order entered January 13, 2016. In September of that year, Wilson filed yet another motion to recuse the circuit court for expressing an opinion as to the merits of the case pursuant to KRS 26A.015(2)(a). The court denied the motion on September 15, 2016.
As discovery continued, Wilson sought leave to depose attorney Enlow, which the court denied by order entered October 11, 2016. The court stated on the record that there was no purpose in taking Enlow's deposition as he was only hired by the CSC to draft the findings of fact and conclusions of law. Wilson then sought a writ with this Court to direct the circuit court to permit him to depose Enlow, which was denied in January 2017. A three-judge panel of this Court observed that "Wilson has not established that Enlow's testimony is critical to the circuit court's ruling in his administrative appeal, and he clearly has an adequate remedy by appeal" or "that he will suffer immediate and irreparable injury if a writ does not issue." The Supreme Court of Kentucky affirmed this ruling in an opinion rendered November 2, 2017.
The parties filed their respective briefs, after which the circuit court entered an order and judgment on February 13, 2017. The court indicated it was satisfied from its review of the transcript of the 2009 hearing and the CSC's 2015 findings of fact and conclusions of law that every fact and conclusion was "amply supported by the evidence presented at the first hearing." The court also held that the proof before the CSC supported a finding that Wilson had been employed in the Department of Law at all times and that the evidence from the depositions established that the CSC members had received a copy of the transcript and had the opportunity to review the suggested findings of fact and conclusions of law before voting at the CSC meeting to terminate Wilson's employment.
Wilson filed a CR 59.05 motion to alter, amend, or vacate the circuit court's opinion, arguing again that an appellate court could not remand the matter to the CSC for findings because it was not authorized to do so by KRS 67A.230, that the circuit judge should have been disqualified, that he was not employed by the Department of Law, and that he should have been afforded a de novo hearing. LFUCG objected to the motion and requested CR 11 sanctions. In an order entered March 13, 2017, the court denied Wilson's CR 59.05 motion as well as LFUCG's motion for sanctions. This appeal by Wilson follows.
On appeal, Wilson argues that the trial judge should have recused pursuant to KRS 26A.015(2)(a), that this Court did not have jurisdiction or authority to permit the circuit court to direct the CSC to enter findings of fact upon remand, that he was entitled to a de novo hearing pursuant to KRS 67A.290 after remand, that the CSC failed to introduce the allegedly deficient legal documents Wilson drafted, that the circuit court should have disqualified Enlow, that he should have been permitted to depose Enlow, that Enlow's findings of fact were a nullity and did not comply with Kentucky law, that KRS 13B.150 did not *384 supply the statutory jurisdiction to direct the CSC to enter findings of fact on remand, and that the circuit court should not have entered summary judgment against the individual defendants. The appellees dispute Wilson's arguments.
For his first argument, Wilson argues that the trial judge should have recused pursuant to KRS 26A.015(2)(a). That subsection requires the disqualification of any judge or justice "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding[.]" Wilson asserts that because the trial judge entered an opinion affirming the CSC's original determination upholding his discharge in Action No. 2010-CI-01402, the judge had expressed an opinion for purposes of the 2015 action.
Wilson relies upon the Supreme Court of Kentucky's opinion in Poorman v. Commonwealth , 782 S.W.2d 603 (Ky. 1989), to support his position that recusal is mandatory. However, Poorman does not mandate recusal in every circumstance:
It is clear from this structure that (a), "knowledge of disputed evidentiary facts concerning the proceeding," is simply illustrative of the major premise requiring recusal "in a proceeding in which his impartiality might reasonably be questioned." It is not a separate rule. Further, it is clear that the kind of knowledge which requires disqualification under (a) is "personal knowledge of disputed evidentiary facts concerning the proceeding," and this refers to knowledge extra-judicially obtained rather than knowledge obtained in official capacity during the course of the proceeding. In short, a judge is not disqualified per se simply because of his prior participation in the case in a judicial capacity.
Id. at 605. Furthermore, we agree with the appellees that even if the trial judge's ruling in the first action somehow made him ineligible to preside over the second action, which we do not believe was the case, the circuit court was being called upon in the second action to review findings of fact and conclusions of law that had not been in existence during the earlier action. Therefore, the circuit court had not expressed any type of opinion as to the findings of fact and conclusions of law before it in the second action. We find no error in the circuit court's refusal to recuse in this matter.
For his second argument, Wilson contends that this Court, in its earlier opinion, did not have the authority to remand the matter to the circuit court with directions for that court to direct the CSC to enter findings of fact to support its decision. He argues that this Court had improperly relied upon KRS 13B.150 to supply jurisdiction for modifying, changing, or setting aside the final administrative order. KRS 13B.020(2)(f) exempts application of KRS Chapter 13B from "[a]dministrative hearings conducted by any city, county, urban-county, charter county, or special district contained in KRS Chapters 65 to 109, or any other unit of local government operating strictly in a local jurisdictional capacity[.]" He also relies upon the holding of the former Court of Appeals in Phelps , 529 S.W.2d at 364, in which that Court stated: "[O]nce the order of March 11, 1975, had been duly issued by the department it became a final order upon the issue involved, and the department was without authority to thereafter modify, change, or set aside the order."
Wilson also argues that the rule of the case doctrine should not apply in this case *385 because our prior decision was "clearly and palpably erroneous[.]" He cites Union Light, Heat & Power Co. v. Blackwell's Adm'r , 291 S.W.2d 539, 542 (Ky. 1956), in which the former Court of Appeals recognized an exception to the law of the case doctrine:
It is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been. Perhaps no court has been as consistent as this court in strictly adhering to the doctrine. We have made no express exception where it appeared the issues and facts were substantially the same on subsequent trials and appeals. We have an unbroken line of innumerable cases. However, some of our opinions in which the rule was not applied reflect the straining of the court to find the evidence was different.
The law of the case rule is a salutory rule, grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation. Thompson v. Louisville Banking Co., Ky. , 55 S.W. 1080, 21 Ky.Law Rep. 1611.
Notwithstanding the firmness of this rule in general, a number of courts have maintained and held that the rule is not inflexible but is subject to exception, although the exception must be rare and the former decision must appear to be clearly and palpably erroneous. In such a case it is deemed to be the duty of the court to admit its error rather than to sanction an unjust result and 'deny to litigants or ourselves the right and duty of correcting an error merely because of what we may be later convinced was merely our ipse dixit in a prior ruling in the same case.' McGovern v. Kraus , 200 Wis. 64, 227 N.W. 300, 305, 67 A.L.R. 1381.
Blackwell's Adm'r , 291 S.W.2d at 542. Therefore, Wilson asserts that we should set aside our prior reliance upon KRS Chapter 13B and reverse the circuit court's order remanding the matter to the CSC to enter findings of fact as well as the judgment upholding his termination. We decline to do so for the reasons set forth in the appellees' brief.
The appellees rely upon our analysis and holding in Brooks v. Lexington-Fayette Urban County Housing Authority , 244 S.W.3d 747, 752 (Ky. App. 2007), in which we extensively examined Blackwell's Adm'r . We stated:
Blackwell's Adm'r noted that "a number of courts have maintained and held that the rule is not inflexible but is subject to exception, although the exception must be rare and the former decision must appear to be clearly and palpably erroneous," Blackwell's Adm'r at 542. The Court then identified conditions commonly held to prompt an exception to the doctrine. In particular, it quoted a Missouri decision which stated:
[w]hether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our *386 duty to re-examine and correct our own errors on the second appeal in the same case.
Id ., quo ting Mangold v. Bacon , 237 Mo. 496, 141 S.W. 650, 654 (1911). After examining the practices of several states and the federal government regarding an exception to the doctrine, the Court concluded:
[a]ll of these cases reflect an accelerating trend to make an exception to the general rule where it clearly appears that the result of the error to be cured far outweighs any harm that may be done in the particular case, especially where no rights have accrued or become vested and no substantial change has been made in the status of the parties by reason of the former decision.
Id. at 543.
Brooks , 244 S.W.3d at 752. We agree with the appellees that Wilson has not established any of the factors necessary to invoke the exception to the rule of the case doctrine.
As the appellees argue, Wilson has misconstrued the holding of Phelps to argue that this Court lacked the necessary authority to remand the decision for the entry of factual findings. Rather, Phelps addressed a situation where the Commissioner of the Department of Banking and Securities, after a final order had been entered, ruled that a hearing would be held regarding the alleged denial of due process rights by lack of adequate notice. What this Court held in Phelps was that the department did not have the authority to modify, change, or set aside the final order. We did not hold that an appellate court was without authority to direct the CSC to do so. Therefore, we find no merit in Wilson's argument that the Court in the prior opinion did not have the authority to direct a remand to the CSC for the entry of findings of fact, and that our prior ruling represents the law of the case.[2]
Next, Wilson argues that the trial court erred when it denied him a hearing on remand pursuant to KRS 67A.290. Again, we find no merit in this argument because Wilson had been afforded a de novo hearing by the circuit court in 2012 during the first appeal, and he did not identify what additional evidence he planned to introduce in a second hearing.
For his next argument, Wilson presents an evidentiary argument that the best evidence rule, Kentucky Rules of Evidence (KRE) 1002, prevents any testimony concerning the deficiencies of his work because none of his work was introduced into evidence. Our review of the record reflects that copies of Wilson's work were introduced at the CSC hearing and were included in a binder labeled as exhibits in the appellate record. Therefore, we find no merit in this argument.
Next, Wilson presents multiple arguments related to the hiring of David Enlow to draft the findings of fact and conclusions of law for the CSC on remand. First he asserts that neither this Court nor the circuit court authorized a non-member of the CSC to draft these findings and conclusions and that none of the actual CSC members stated there was any deliberation or debate before they voted to terminate Wilson's employment. Therefore, Wilson argues, Enlow should be disqualified. We disagree with this argument, as the members of the CSC had ample time to review the transcript of the original 2009 hearing as well as the proposed findings and conclusions drafted by Enlow *387 before making the decision to terminate Wilson. Furthermore, the Commissioner of Law had the authority to retain Enlow as legal counsel pursuant to the LFUCG's Charter, as cited in the appellees' brief.
Second, Wilson contends that he should have been permitted to depose Enlow. However, he has failed to state what purpose this would serve or that the recollection of his former attorney that Enlow said he had been hired to effect Wilson's termination has any bearing on the CSC's ultimate decision. Third, we reject Wilson's argument that the findings of fact and conclusions of law were a nullity; the commissioners had ample opportunity to review the transcript and proposed findings and conclusions prior to considering the issue at the CSC meeting where they voted to uphold Wilson's termination. And fourth, we reject Wilson's argument that the findings did not comply with Kentucky law. The CSC did not act arbitrarily in any fashion when it adopted the proposed findings of fact and conclusions of law as they were supported by substantial evidence of record establishing Wilson's termination was merited.
Finally, Wilson argues that the circuit court should not have entered summary judgment in favor of Bowman and Askew, against whom Wilson had alleged claims of discrimination and misfeasance. We decline to review this argument because Wilson failed to appeal this decision. He only appealed the circuit court's ruling on his administrative appeal. Therefore, this argument is not properly before this Court for review.
For the foregoing reasons, the orders of the Fayette Circuit Court are affirmed.
ALL CONCUR.

We also reject Wilson's later argument that KRS 13B.150 did not supply the circuit court with jurisdiction to direct the CSC to enter findings of fact on remand.